**Virgil ROTT, Plaintiff and Appellant,**

**and**

**Shirley Rott, Dwight Rott, Leland Rott, Plaintiffs,**

**v.**

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a corporation authorized to do business in the State of North Dakota; the Tappen Group, a partnership, and each member of that group individually, including the following individuals: Sharon Nyhus, Andrew Braun, Bruce Guthmiller, Paul Whitman and Kay Jongsma; Jonathan**

Liechty, Lloyd Raile, Lila Raile, James Bitz, Jesse Peterson and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint, Defendants and Appellees.

Civ. No. 910119.

Supreme Court of North Dakota.

Dec. 9, 1991.

Virgil Rott, pro se.

Howard D. Swanson of Letnes, Marshall, Fiedler & Clapp, Ltd., Grand Forks, for defendants and appellees Connecticut General Life Ins. Co., the Tappen Group, and Sharon Nyhus, Andrew Braun, Bruce Guthmiller, Paul Whitman, Kay Jongsma, Jonathan Liechty, James Bitz and Jesse Peterson.

Gregory W. Tschider, Jr. (appearance), of Tschider & Richau, Bismarck, for defendants and appellees Lloyd Raile and Lila Raile.

VANDE WALLE, Justice.

Virgil Rott appealed from a summary judgment dismissing his action to recover $700,000 in damages and to quiet title to certain real property in the names of Virgil and Shirley Rott [the Rotts]. We affirm.

The facts in this case are mostly undisputed. On August 15, 1979, the Rotts granted Connecticut General Life Insurance Company [Connecticut General] a mortgage on real and personal property located in LaMoure and Kidder counties to secure a $1,200,000 loan. The Rotts defaulted and Connecticut General brought a foreclosure action against them in 1983. A foreclosure judgment was entered on November 16, 1983, directing that the property be sold "by the Sheriff of LaMoure County."

On January 30, 1984, one day before the scheduled sheriff's sale, the Rotts filed a bankruptcy petition, thus staying the sheriff's sale. After the bankruptcy court lifted the stay, the sheriff's sale was held on June 26, 1985, in LaMoure County. Virgil appeared at the sale and, at his request, the real property was sold in separate parcels. Virgil made no other objections at the sheriff's sale and both the Kidder and LaMoure County property was sold to Connecticut General for $1,502,962.89. After the sheriff's report of sale was filed, the district court confirmed the sale in July 1985. The Rotts filed no objections to the report of sale or to the court's order confirming the sheriff's sale, nor did they appeal.

The Rotts failed to redeem and a sheriff's deed was issued to Connecticut General on June 30, 1986. Connecticut General then brought an eviction action against the Rotts in LaMoure County. The Rotts again filed a bankruptcy petition, this time asserting in part that the "sheriff's sale was void." However, the bankruptcy court lifted the automatic stay and authorized Connecticut General to proceed with the eviction action. The county court ordered the Rotts to vacate the premises and they appealed to this court, asserting that the state constitution prohibited a foreclosure action against a homestead. We affirmed

pursuant to Rule 35.1, N.D.R.App.P. See *Connecticut General Life Ins. Co. v. Rott*, 422 N.W.2d 98 (N.D.1988).

On September 14, 1987, the Rotts filed with the district court for LaMoure County a Rule 60(b), N.D.R.Civ.P., motion for relief from the 1983 foreclosure judgment asserting in part that the 1985 sheriff's sale "was totally defective, in that the Sheriff of LaMoure County sold, amongst [sic] various parcels of real property located in LaMoure County, at least six parcels of real property located in Kidder County, in violation of NDCC Section 28–23–05." The trial court denied the motion for relief from judgment, concluding that the "time for appeal is past and [pursuant to § 32–19–08, N.D.C.C.] the sale of the land is not in violation of the law." The Rotts appealed to this court and requested a stay of execution of the judgment, again on the grounds that the sheriff's sale was void. We issued a temporary stay of proceedings and subsequently ordered that the stay be ended unless a supersedeas bond was filed and approved by the trial court by November 20, 1987. The Rotts did not file a bond. On December 21, 1987, Connecticut General moved to dismiss the appeal for the Rotts' failure "to comply with the Rules of Appellate Procedure." We dismissed the appeal on December 23, 1987.

Also in December 1987, Virgil brought an action against LaMoure County sheriff Luther Edmunds, LaMoure County deputy sheriff Marke Roberts, and LaMoure County. Virgil asserted in part that Edmunds, at the 1985 sheriff's sale, illegally sold the Kidder County property in violation of § 32–19–08, N.D.C.C. Virgil requested that the 1985 sheriff's sale "be set aside and vacated." On April 25, 1988, judgment was entered dismissing the action "with prejudice." Virgil filed a Rule 60(b), N.D.R.Civ.P., motion to vacate this judgment. The district court denied the motion. Virgil did not appeal.

The Rotts still refused to remove certain personal property from the premises. Connecticut General filed a motion to show cause, and in March 1988 the LaMoure County court ordered that the Rotts re-

move all remaining personal property from the premises by June 1, 1988. The Rotts filed an appeal to this court on August 11, 1988. We dismissed that appeal on November 23, 1988, again for the Rotts' failure to comply with the Rules of Appellate Procedure.

On November 28, 1988, Virgil sought an injunction from the LaMoure County court to prevent his eviction from the LaMoure County farmstead. Virgil argued that the 1985 sheriff's sale was "flawed and void because it included real property located in a different county of the State of North Dakota." The county court denied injunctive relief. Virgil did not appeal.

Connecticut General subsequently sold the LaMoure County property to Jonathan Liechty, James Bitz, and Jesse Peterson. The Kidder County property was sold to the Tappen Group, a partnership consisting of Sharon Nyhus, Andrew Braun, Bruce Guthmiller, Paul Whitman, and Kay Jongsma. The Tappen Group then sold a portion of the Kidder County property to Lloyd and Lila Raile.

The Rotts commenced the present action in July 1989, alleging that the sheriff's sale was "void because the Sheriff of LaMoure County did not have the authority to sell any land not located in whole or in part in LaMoure County." The Rotts sought $700,000 in damages and an order quieting title to the property in them. The trial court granted the defendants' motion for summary judgment dismissing the action. Only Virgil has appealed from this judgment.

■ Summary judgment is proper when, after viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Volk v. Wisconsin Mortgage Assurance Co.,* 474 N.W.2d 40 (N.D.1991). Even if factual disputes exist, summary judgment is appropriate when resolution of those factual disputes would not change the result. *Russell v. Bank of Kirkwood Plaza,* 386 N.W.2d 892 (N.D.1986).

Virgil asserts that because the LaMoure County sheriff sold property located in Kidder County, the 1985 sheriff's sale is void as a matter of law and this case must therefore be remanded for trial on the issue of damages. We disagree.

Connecticut General contends that the sheriff's sale was not unlawful, and therefore not void, because § 32–19–08, N.D.C.C., allows a sheriff to sell property located in another county if part of the mortgaged premises is located in the sheriff's county. That statute provides:

> "*32–19–08. Sales made by whom and where—Notice.* All sales of mortgaged premises under a judgment of foreclosure must be made in the county where the premises, *or some part of them,* are situated, by the sheriff of that county or his deputy, or by some person appointed by the court for that purpose, upon the notice and in the manner prescribed by law for the sale of real property upon execution." [Emphasis added.]

Virgil responds that this statute does not authorize a sheriff to sell at a foreclosure sale any portion of the mortgaged premises not located in the sheriff's county.[1]

■ A statute is ambiguous if it is susceptible to differing but rational meanings. *Souris River Telephone v. Workers Compensation Bureau,* 471 N.W.2d 465 (N.D. 1991). To the extent that the "or some part of them" language of § 32–19–08 can reasonably be interpreted to allow a sheriff at a foreclosure sale to sell property located outside the sheriff's county, the statute is ambiguous. In construing ambiguous statutes, we may consider the purpose and

---

1. Virgil relies on an opinion of the North Dakota attorney general which concluded that "when a judgment of foreclosure includes real property located in more than one county, a county sheriff may sell at an execution sale of the mortgaged property only that part of the real property that is located in his county." Op.N.D.Att'y Gen. May 16, 1988. Although attorney general opinions are not binding on this court, they are entitled to respect and we follow them if they are persuasive. *Christianson v. City of Bismarck,* 476 N.W.2d 688, 691 (N.D.1991); *Holmgren v. N.D. Workers Comp. Bureau,* 455 N.W.2d 200, 204 (N.D.1990).

object of the statute, other laws on the same subject, and the legislative history. *Walker v. Schneider,* 477 N.W.2d 167, 172 (N.D.1991); § 1–02–39, N.D.C.C.

Sections 28–21–05 and 28–23–05, N.D.C.C., require that all sales of real property, under execution, be held in the county where the real property is located:

"*28–21–05. Execution issued to sheriff of counties where judgment docketed.* When the execution is against the property of the judgment debtor, it may be issued to the sheriff of any county where the judgment is docketed. When it requires the delivery of real or personal property, it may be issued to the sheriff of any county where the property or some part thereof is situated. An execution must be issued from the court of the county which entered the judgment, though more than one execution may be issued at the same time to different counties. *Real property adjudged to be sold must be sold in the county where it lies by the sheriff of that county,* or by a referee appointed by the court for that purpose, and thereupon the sheriff or referee must execute a certificate of sale to the purchaser as hereinafter provided. If the sheriff of the county to which the execution may be issued was a party in the action which resulted in the judgment or has an interest in any of the property against which the execution may be applied, the execution may be issued to the coroner of that county, and the coroner shall have the same power and authority to enforce the judgment by execution as provided to the sheriff in this chapter." [Emphasis added.]

"*28–23–05. Where sale of real property made.* All sales of real property, or any interest therein, under execution, must be held at the courthouse, if there is one in the county *in which such real property is situated,* and if there is no courthouse, then at the door of the house in which the district court was last held, and if there is no courthouse and no district court has been held in the county, then at such place within the county as the sheriff shall designate in his notice of sale." [Emphasis added.]

■ Our review of the legislative history of § 32–19–08 convinces us that the statute was not intended to eliminate the requirement that a sheriff sell only real property located in the sheriff's county. In 1983 House Bill No. 1382 amended § 32–19–08 to include the "or some part of them" language. 1983 N.D.Sess.Laws Ch. 376 § 1. House Bill No. 1382 was a companion bill to House Bill No. 1381, which amended § 28–04–01, N.D.C.C., to allow a lender to bring only one action to foreclose a mortgage covering land in more than one county. 1983 N.D.Sess.Laws Ch. 362 § 1. The proponent of the bills intended the legislation to allow only one foreclosure action when a mortgage covered property in more than one county, but to nevertheless require "two sales," one in each county where the property was located. Hearings on House Bill Nos. 1381 and 1382, House Judiciary Committee, 48th Leg. Assembly, January 25, 1983. We therefore conclude that § 32–19–08 does not permit a sheriff at a foreclosure sale of real property located in the sheriff's county to sell real property located in another county.

However, we cannot accept Virgil's assertion that the LaMoure County sheriff's sale of the Kidder County property renders the sheriff's sale void as a matter of law requiring that title to the property be quieted in him.

■ A judgment is void if the court lacked subject matter jurisdiction over the action or if the court lacked personal jurisdiction over the parties. *Matter of Estate of Hansen,* 458 N.W.2d 264 (N.D.1990). The "subject matter jurisdiction of a district court is not determined by whether or not it correctly applied a statute to a particular cause of action because, to hold otherwise, would vest subject matter jurisdiction in a district court subject to divestment upon an erroneous ruling." *Production Credit Ass'n v. Dobrovolny,* 415 N.W.2d 489, 491 (N.D.1987). Thus, although erroneous rulings of the trial court in this area of the law provide grounds for reversal on direct appeal [e.g., *Federal Land Bank of St. Paul v. Waltz,* 423 N.W.2d 799

(N.D.1988); *Hagan v. Havnvik*, 421 N.W.2d 56 (N.D.1988) ], we have generally refused to find that violations of our foreclosure laws and manner-of-sale laws render foreclosure proceedings void or jurisdictionally defective in the sense that such violations may be challenged at any time.[2]

Recently, in *Matter of Estate of Hansen*, we ruled that a sheriff's refusal to sell property in separate parcels and in the sequence requested by the mortgagor, allegedly in violation of § 28–23–07, N.D.C.C., and 1987 N.D.Sess.Laws Ch. 194, did not render the foreclosure judgment and foreclosure sale void as a matter of law. Rather, we viewed the alleged violation of the statutes as an error of law in the proceedings which might furnish grounds for reversal on direct appeal, but because the error "implicate[d] neither subject matter nor personal jurisdiction," it did not invalidate the foreclosure judgment or sale. *Matter of Estate of Hansen, supra.* See also, *Northwestern Nat'l Life Ins. Co. v. Delzer*, 425 N.W.2d 365 (N.D.1988) [foreclosure judgment was not void for failure to comply with the notice before foreclosure requirements of Chapter 32–19, N.D.C.C.]; *Dobrovolny, supra* [assertion that statutory redemptioner could not buy a sheriff's certificate from the purchaser at a foreclosure sale, even if legally correct, did not render foreclosure judgment void]; *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789 (N.D.1986) [creditor's failure to comply with anti-deficiency judgment laws did not render foreclosure judgment or sale void]; *Baird v. Sax Auto Co.*, 70 N.D. 53, 291 N.W. 696 (1940) [failure of sheriff to follow directions of court in offering mortgaged premises for sale did not render sale void]; *Finch, Van Slyck & McConville v. Jackson*, 57 N.D. 17, 220 N.W. 130 (1928) [inadequacy of price was not a claim that would render sale void]; *Michael v. Grady*, 52 N.D. 740, 204 N.W. 182 (1925) [sale en masse of property which should be sold separately is not void]; *Winslow v. Klundt*, 51 N.D. 808, 201 N.W. 169 (1924) [irregularity in publishing notice of sale did not render sale void]; *Dakota Inv. Co. v. Sullivan*, 9 N.D. 303, 83 N.W. 233 (1900) [execution issued seven years after judgment in violation of statute did not render sale void]; *Power v. Larabee*, 3 N.D. 502, 57 N.W. 789 (1894) [failure of sheriff to sell land in separate parcels did not render sale void].

Most recently, in *Lang v. Barrios*, 472 N.W.2d 464 (N.D.1991), we held that a sheriff's sale of levied personal property in violation of § 28–23–07, N.D.C.C., did not render the sale void, but rendered it voidable if challenged within a reasonable time. We explained:

"Whether an execution sale has been timely attacked, and can be set aside, depends, in part, on whether the sale is void or voidable. A void sale is a nullity and can, therefore, be attacked anytime. *See Kuntz v. Partridge*, 65 N.W.2d 681, 690 (N.D.1954); *Power v. Larabee*, 3 N.D. 502, 57 N.W. 789, 791 (1894); *see also*, 30 Am.Jur.2d *Executions* § 318. A sale is void if the sheriff lacked jurisdiction over the property, as in the case of inadequate notice, *Kuntz*, 65 N.W.2d at

---

**2.** We note that jurisdictional defects are more likely to be found in tax sale proceedings. See *Fibelstad v. Grant County*, 474 N.W.2d 54 (N.D. 1991); but see *K & L Homes, Inc. v. Burleigh County*, 478 N.W.2d 376 (N.D.1991). This is so not only because of the comprehensive statutory scheme governing tax sales which specifically identifies certain jurisdictional defects, but because of the nature of tax sale proceedings. Unlike foreclosure proceedings in which an aggrieved party may directly appeal from a foreclosure judgment or order confirming the sheriff's sale [see *Matter of Estate of Hansen*, 458 N.W.2d 264 (N.D.1990) ], tax sale proceedings generally are not conducted under direct judicial supervision. Moreover, as we recognized in *Fibelstad, supra*, 474 N.W.2d at 61–62:

"Tax sale proceedings 'are for the enforcement of taxes, and not for the purpose of depriving someone of his or her property....' Annot., *Right of interested party receiving due notice of tax sale or of right to redeem to assert failure or insufficiency of notice to other interested party*, 45 A.L.R. 4th 447, 451 (1986). For that reason, tax sale proceedings are viewed as drastic in nature, there must be strict compliance with mandatory and jurisdictional requirements of the relevant statutes, and those statutes will be strictly construed in favor of the owners of the property. *Brink v. Curless*, 209 N.W.2d 758, 765 (N.D.1973), overruled on other grounds in *City of Bismarck v. Muhlhauser*, 234 N.W.2d 1, 5 (N.D.1975)."

690, or when an execution is issued on a void judgment, *Renner v. J. Gruman Steel Co.*, 147 N.W.2d 663, 669 (N.D.1967). A voidable sale is one where the sheriff has authority to make the sale but exercises that authority in a manner that allows an interested party to challenge the sale, as when the sheriff fails to follow a manner-of-sale statute. *Power,* 57 N.W. at 791; *cf. Matter of Estate of Hansen,* 458 N.W.2d 264, 268–69 (N.D.1990)." *Barrios, supra,* 472 N.W.2d at 466.

This court has not determined whether a sheriff's sale of real property held pursuant to a foreclosure judgment which directs that the sheriff sell property located outside the sheriff's county renders the judgment, and therefore the sale, void. However, as in *Matter of Estate of Hansen, supra,* nothing in the language of §§ 28–21–05, 28–23–05, and 32–19–08 suggests that the Legislature intended that the failure to comply with these provisions would render the foreclosure proceedings void or jurisdictionally defective. We agree with the rationale of the court in *Lansburgh v. McCormick,* 224 F. 874 (4th Cir.1915). In *Lansburgh,* a federal court erroneously ordered that a public sale of real estate be held outside of the county in which the land was located, in violation of a federal law. Almost 10 years after the sale was conducted, Lansburgh brought a suit to set aside the sale. The court reasoned:

"This sale is attacked as a nullity because under the order of the court the sale was made in the city of Charleston, and not, as required by the federal statute, on the premises or at the courthouse door of McDowell county, in which the land lies. The court having jurisdiction to order the sale, the mistake of directing that it be made at a place different from that required by the statute did not make the sale void for want of jurisdiction, but was an error to be corrected by appeal or by direct application to the trial court. *Godchaux v. Morris,* 121 Fed. 482, 57 C.C.A. 434....

"But if the law were otherwise, Lansburgh's conduct in requesting the judge to have the decree of sale carried out as soon as possible, in advertising the sale by pamphlets, in making no objection, though present at the sale, and in filing exceptions to the report of sale, which made no allusion to the error of ordering the sale at Charleston, would estop him from now having the sale annulled after the rights of third parties have become involved...." *Lansburgh, supra,* 224 F. at 876–877.

We conclude that the sheriff's sale of the Kidder County property in violation of §§ 28–21–05, 28–23–05, and 32–19–08 does not render the sheriff's sale void or jurisdictionally defective, and that, under these circumstances, Virgil's challenge to the legality of the sale comes too late. This court recognized long ago that:

"There must be a period after which an execution sale will not be disturbed. All the authorities agree on this point, and there seems to be much force in the view that the defendant must move in a reasonable time, and that, where there is a right of redemption vested by the statute in the defendant, this reasonable time is measured by the statutory period of redemption.... While it is true that as against the plaintiff, who has bought in the property, the court may set aside a sale even after the redemption period has expired, this can be done only by a proper showing excusing the delay in making the motion." *Power, supra,* 57 N.W. at 791.

In this case, Virgil has not established any prejudice resulting from the sale. A notice of sheriff's sale was published in both official newspapers of LaMoure and Kidder counties. The record shows that Virgil did not object to the LaMoure County sheriff selling the Kidder County property. Virgil raised no objection to the sheriff's report of sale or to the district court's order confirming the sale and did not appeal. The Rotts first asserted that the sale was void and that the sheriff sold the land in violation of § 28–23–05 in 1987 through a bankruptcy proceeding and a Rule 60(b) motion for relief from judgment in state court. The Rotts' appeal from the district court's denial of

that motion was dismissed for failure to comply with the appellate rules. The issue was again raised in Virgil's 1987 action against the LaMoure County sheriff and his 1988 suit seeking injunctive relief to prevent his eviction. Virgil did not appeal from those adverse decisions. In the meantime, the property at issue was sold to third parties.

Virgil had countless opportunities to challenge the legality of the sheriff's sale. On the occasions the issue was raised, Virgil failed to appeal those adverse decisions or had the appeals dismissed for failure to comply with the appellate rules. Regardless of whether the doctrine of res judicata would deny Virgil relief under these circumstances,[3] we believe that principles of estoppel prevent him from upsetting the sheriff's sale at this time. See *Lansburgh, supra; Matter of Estate of Hansen, supra; Winslow, supra; Power, supra.*

In view of our disposition of this issue, it is unnecessary to address the other issues raised by the parties. Accordingly, the summary judgment of dismissal is affirmed.

ERICKSTAD, C.J., and LEVINE and MESCHKE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

---

**3.** Generally, the doctrine of res judicata means that a valid, existing, and final judgment from a court of competent jurisdiction is conclusive against the parties and their privies on issues raised, or those that could have been raised and determined there. *United Hospital v. D'Annunzio,* 466 N.W.2d 595 (N.D.1991). However, in *Vanover v. Kansas City Life Ins. Co.,* 438 N.W.2d 524, 526 (N.D.1989), a majority of this court adopted the position of the *Restatement (2d),* Judgments § 27, *Comment i* (1982), that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Nevertheless, when a decision is "neither tentative nor provisional nor contingent," it should be given preclusive effect in proper circumstances. *Westman v. Dessellier,* 459 N.W.2d 545, 547 (N.D.1990).