**S.W., Plaintiff and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES and Rolette County Social Service Board, Defendants and Appellees.**

Civ. No. 870185.

Supreme Court of North Dakota.

March 7, 1988.

---

Foughty, Christianson & White Eagle, Devils Lake, for plaintiff and appellant; argued by Maureen Foughty White Eagle.

Sidney J. Hertz Fiergola (argued), Human Services Department, Bismarck, for defendants and appellees.

MESCHKE, Justice.

S. W. appealed from a decision of the North Dakota Department of Human Services which denied her application for Aid to Families with Dependent Children [AFDC] benefits. The district court affirmed and we affirm.

S.W. and A.W. were married in 1979. Although separated in 1982, they did not divorce and "kept seeing each other" until June 1986. Meanwhile, S.W. began living with another man, C.M., in 1983. S.W. had two children, E.L.W., born February 22, 1986, and K.F.W., born February 5, 1985. A.W. was listed as their father on the birth certificates.

S.W., with her children, moved to North Dakota in June 1986 and applied for AFDC

benefits. C.M. continued to live with her. Both S.W. and C.M. signed affidavits, titled "acknowledgments of paternity," identifying C.M. as the natural father of both children. In the affidavits, both S.W. and C.M. consented to the recording of C.M.'s name on the childrens' birth certificates. Because S.W. admitted that C.M. was living in the home, the county social service board decided she was ineligible for AFDC benefits, concluding that the children were not deprived of parental care or support.

S.W. appealed, asserting that because she was still legally married to A.W., named as the father on the childrens' birth certificates, he was legally presumed to be their father, and because A.W. was not living in the home, she was entitled to AFDC benefits. S.W. did not deny that C.M. is the natural father of the children. Following an administrative hearing, the Department denied her claim for benefits. The district court affirmed the Department's decision, and this appeal followed.

Our review of administrative decisions is governed by § 28–32–19, N.D.C.C., which requires us to affirm: 1) if the decision is in accordance with the law; 2) if the findings of fact are supported by a preponderance of the evidence; 3) if the conclusions of law are sustained by the findings of fact; and 4) if the agency decision is supported by the conclusions of law. *See Skjefte v. Job Service North Dakota*, 392 N.W.2d 815, 817 (N.D.1986).

The AFDC program has been characterized as an exercise in "cooperative federalism." *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). It is a grant-in-aid program established by the federal government and governed in turn by federal and state statutes and regulations. *See* 42 U.S.C. § 601 *et seq.;* 45 C.F.R. Chapter II; Chapter 50–09, N.D. C.C.; Chapter 75–02–01, N.D.Adm.Code. In this state, county social service boards, in accordance with the rules of the Department, have the duty of determining whether an applicant is eligible for AFDC assistance. § 50–09–09(1), N.D.C.C.

In order to be eligible for AFDC benefits, a child must be a "dependent child."

For this case, a dependent child is defined as a "needy child ... who has been deprived of parental support or care by reason of the ... continued absence from the home ... of a parent, ..." 42 U.S.C. § 606(a)(1). The United States Supreme Court has made it clear that the statutory term "parent" includes only "an individual who owed to the child a state-imposed legal duty of support." *King v. Smith, supra,* 392 U.S. at 329, 88 S.Ct. at 2139.

S.W. argues that the Department had no authority to rebut or establish paternity in an administrative proceeding. She contends that regardless of her and C.M.'s written acknowledgments that C.M. is the father of the children, the Department was bound to consider A.W. as the father. This is so, she maintains, because she was still legally married to A.W. and because he was named as the father on the childrens' birth certificates. If the Department questioned A.W.'s paternity of the children, she asserts, it was required to proceed with a district court action under the Uniform Parentage Act, Chapter 14–17, N.D.C.C.

S.W. relies on two Washington cases, *Woolery v. Dept. of Social & Health Services*, 25 Wash.App. 762, 612 P.2d 1 (1980), and *Taylor v. Morris*, 88 Wash.2d 586, 564 P.2d 795 (1977), which held that the state Department of Social and Health Services had no authority to determine paternity in administrative proceedings to obtain reimbursement from alleged natural parents of children receiving state support. The Washington courts concluded that to ascertain parentage for enforcement of support the Department had to proceed under the Washington version of the Uniform Parentage Act. Those cases, however, did not consider the authority of the administrative agency to determine eligibility for AFDC benefits. Moreover, neither case dealt with an acknowledgment of paternity signed by the mother and the man with whom she was currently living.

S.W. argues, in effect, that a district court proceeding under Chapter 14–17, N.D.C.C., is the exclusive method of determining parentage. We disagree. We have held that county courts have authority to

ascertain paternity in probate matters as incidental and necessary to the power of county courts to determine heirs and successors of decedents. *See Matter of Estate of Sorensen*, 411 N.W.2d 362, 365 (N.D.1987); *C.L.W. v. M.J.*, 254 N.W.2d 446, 450 (N.D.1977).

■ The Department, through county social service boards, must determine whether an applicant is qualified to receive AFDC benefits. Whether a "parent" is absent from the home is an element of AFDC eligibility. Consequently, determining parentage is incidental and necessary to the performance of the Department's duties. We conclude that the Department, with the written acknowledgments of paternity in hand, was not required to adjudicate paternity in district court under Chapter 14–17, N.D.C.C., before it could properly deny the claim for AFDC benefits.

■ Of course, the effect of the Department's determination of paternity is limited to eligibility for AFDC benefits. It can have no res judicata effect for any other purpose. The Department recognizes that if it sought reimbursement from C.M.[1] for AFDC benefits paid to S.W.'s family, C.M. could raise the issue of his paternity as a defense. Then, paternity would have to be adjudicated.

■ We conclude that the Department was entitled to rely upon the written ac-

knowledgments of paternity signed by S.W. and C.M. for the limited purpose of determining eligibility for AFDC benefits. Furthermore, contrary to S.W.'s assertion, we conclude that the Department's decision was consistent with the presumptions and standards in § 14–17–04(1)(a), (d), (e) and (2), N.D.C.C.[2]

Accordingly, the Department's decision is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

1. Counsel have informed us that S.W. reapplied for benefits in July 1987, and because C. M. had left the home, S.W. was found eligible to receive AFDC benefits. S.W.'s rights to support from C.M. were assigned to the county and state.

2. Pertinent parts of section 14–17–04, N.D.C.C., provide:

"1. A man is presumed to be the natural father of a child if:

"a. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;

\* \* \* \* \* \*

"d. While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child; or

"e. He acknowledges his paternity of the child in a writing filed with the division of

vital statistics of the state department of health, which shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the division of vital statistics of the state department of health. If another man is presumed under this section to be the child's father, acknowledgment may be effected only with the written consent of the presumed father or after the presumption has been rebutted.

"2. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man."